**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Germantom International GMBH,

                  Plaintiff,

              v.                                        20-cv-918 (AKH)

Epoch Times, Inc., Universal Communications
Network Inc. d/b/a Universal Communications
Network NY or New Tang Dynasty, New Tang
Dynasty Television Inc., New Tang Dynasty,
Zhong John Tang,

                  Defendants.

_____


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(5) AND FED. R. CIV. P. 4(m)**


Respectfully submitted,


/s/ Stewart Weisman

_____

By:    Stewart Weisman
        Attorney for Defendants
        8060 Shadowrock Road
        Manlius, NY 13104
        315.254.9254
        Bar Roll No. 102806
        Admitted Pro Hac Vice
        sweisman@twcny.rr.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………3

I.      INTRODUCTION……………………………………………………………………4

II.     STATEMENT OF FACTS………………………………………………….........4

        A.  Background………………………………………………………………..4

        B.  Relevant Material Facts………………………………………………….4

        C.  Affidavits of Service……………………………………………………5

III.    PROCEDURAL HISTORY………………………………………………………...6

IV.     ARGUMENT…………………………………………………………………7

        A.  Service Upon the Corporate Defendants…………………………………...8

        B.  Service Upon Mr. Tang………………………………………………12

        C.  Failure to Service within 90 Days……………………………...............14

            1.  Germantom's Violation of a Court Order………………….....................15

            2.  Germantom's Attempt to Modify the Affidavits of Service…………………17

V.      CONCLUSION………………………………………………………………19

TABLE OF AUTHORITIES

Cases                                                                                          Page

*Arizaga v. Reina de la Nube Azoguez, Inc.*, 2020 US Dist LEXIS 66432 (EDNY 2020)..........10

*Brunson-Bedi v. NY,* 2018 US Dist LEXIS 74031 (SDNY 2018)………………………………..8

*Crawford v. US Sec. Assoc.*, 2020 US Dist LEXIS 3562 (SDNY 2020)…………………..8,10, 11

*D'Amico Dry D.A.C. v. McInnis Cement Inc.*, 2020 US Dist LEXIS 114749 (SDNY 2020)…….9

*Fowler v. City of NY*, 2015 US Dist LEXIS 171729 (EDNY 2015)………………………………7

*Germantom v. Epoch Media Group*, LLC, Case No. 19-cv-10306 (SDNY 2019)(AKH)……6, 15

*GMA Accessories, Inc. v BOP, LLC*, 2008 US Dist LEXIS 26120 (SDNY 2008)………………13

*Ji Han Yoon v. Toothsavers Dental Lab., Inc.*, 2020 US Dist LEXIS 109934 (EDNY 2020)…..12

*Kogan v. Facebook, Inc.*, 2020 US Dist LEXIS 19464 (SDNY 2020)…………………………14

*Miss Jones, LLC v. Viera,* 2019 U.S. Dist. LEXIS 19510 (EDNY 2019)………………………12

*Motorola Credit Corp. v. Uzan*, 561 F3d 123 (2d Cir. 2009)…………………………………15

*Omni Capital Int'l, Inc. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987)……………………………..7

*Oyewole v Ora*, 291 F Supp 3d 422 (S.D.N.Y. 2018), aff'd, 776 F. App'x 42 (2d Cir. 2019)…….8

*S. Bay Sailing Ctr., Inc. v. Std. Fire Ins. Co.*, 2017 US Dist LEXIS 7116 (EDNY 2017)………13

*Tooker v. Town of Southampton*, 2019 US Dist LEXIS 11781 (EDNY 2019)…………………14

*Valle v. GDT Enters.,* 2020 US Dist LEXIS 14067 (EDNY 2020)………………..9, 10, 11, 12, 17

*Zapata v. City of NY*, 502 F3d 192 (2d Cir. 2007)…………………………………….............14

Statutes

Fed. R. Civ. P. 4………………………………………………………………….8, 12, 13, 18

Fed. R. Civ. P. 12(b)(5)…………………………………………………………………7, 8

CPLR § 308…………………………………………………………………………...13

NY Executive Law § 130, *et seq*…………………………………………………...18

## I.      INTRODUCTION

Defendants, Epoch Times, Inc., Universal Communications Network Inc. d/b/a Universal Communications Network NY or New Tang Dynasty, New Tang Dynasty Television Inc., New Tang Dynasty (collectively, the "Corporate Defendants") and Zhong John Tang ("Mr. Tang") bring this motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process and failure to serve the complaint within ninety (90) days pursuant to Fed. R. Civ. P. 4(m). All defendants are sometimes referred to as the "Defendants."

## II.      STATEMENT OF FACTS[1]

### A.  Background.

Plaintiff, Germantom International GMBH, is a German corporation, having a principal place of business in Baden-Baden, Germany (referred to as "Germantom" or "Plaintiff") and purports to be in the business of operating an online department store (Exhibit A ¶1). Corporate Defendants are involved in the media industry (Exhibit A ¶¶2-5). Germantom commenced this action by filing the complaint on February 4, 2020 essentially alleging breach of contract (Exhibit A). Defendants filed their answer on April 3, 2020 (Exhibit B). Defendants' answer alleges that Germantom's claims are barred due to lack of personal jurisdiction and insufficient service of process (Exhibit B Second Defense).

### B.  Relevant Material Facts.

On March 13, 2020, Leefong Shu ("Ms. Shu") was sitting behind the receptionist desk at the Corporate Defendants' offices in New York City (Shu Declaration ¶3). Ms. Shu is a part-time, volunteer and sometimes acts as a receptionist for the corporate Defendants (Shu

---

[1] Unless otherwise noted, the referenced exhibits are from the Attorney's Declaration in Support of the Motion.

Declaration ¶2 and Cheng Declaration ¶3). Ms. Shu is not a corporate officer nor is she authorized to accept service of a summons and complaint on behalf of any of the Corporate Defendants (Shu Declaration ¶7 and Cheng Declaration ¶4).

That day, a man entered the reception area carrying a pile of documents approximately four (4) inches thick (Shu Declaration ¶2). The man placed the pile of documents on the top of the counter at the reception desk (*Id.*). He did not say what the papers were about nor did he further identify himself. There were no other persons in the reception area, but Ms. Shu and the process server (Shu Declaration ¶5).

Ms. Shu told the man several times that she could not accept the documents and asked him to take them back (Shu Declaration ¶6). He insisted that he needed to deliver them to the companies, left the reception area, and exited leaving the stack of documents on the counter (Shu Declaration ¶6). The process server never asked Ms. Shu if she knew the individual defendant Mr. Tang, he did not ask whether Mr. Tang worked in the office, nor did he ask whether Mr. Tang was available (Shu Declaration ¶7). Ms. Shu was not authorized to accept service on behalf of defendant Mr. Tang (Tang Declaration ¶3).

C.  The Affidavits of Service.

Germantom filed affidavits of service which allege that all Defendants were served *en masse* on March 13, 2020 (Exhibit C). The affidavits of service state that the pleadings were "left with the receptionist" (*Id.*) The affidavits of service do not set forth that any of the pleadings were mailed to any of the Defendants only that they were left with the receptionist (*Id.*).

In an effort to resolve the issues involved in the instant motion prior to filing it, Defendants' attorney sent a letter to Germantom's counsel via email on July 15, 2020 inviting him to discuss the procedural infirmity of serving an unauthorized person (Attorney Declaration

¶11 and Exhibit D). Counsel to Germantom replied "[t]hanks for the letter. I will get back to you

shortly." (Attorney Declaration ¶12 and Exhibit E). Instead of contacting Defendants' counsel in

a timely manner, Germantom's counsel contacted the process server and asked him to sign new

affidavits of service <u>four months later</u> to include language which he mistakenly believed would

be curative (Attorney Declaration ¶13 and Exhibit F).[2]

The language that was added to the "new" affidavits was inserted on July 22, 2020, more

than <u>one week</u> after Defendants' counsel's invitation to resolve this matter and reads: "She

appeared to be authorized to accept service on behalf of Epoch Times, Inc., the related entities

and individual." (Attorney Declaration ¶14 and Exhibit F). The notary on the "new" affidavits is

licensed in Georgia not New York although the process server works in New York City

(Attorney Declaration ¶16 and Exhibit F).

### III.    PROCEDURAL HISTORY

Germantom had commenced a prior action against Epoch Media Group, LLC on

November 8, 2019, Case No. 19-cv-10306 (AKH) (Attorney Declaration ¶18 and Exhibit G).

The prior complaint was conditionally dismissed by order of this Court because Germantom

failed to identify the members of Epoch Media Group, LLC and allege their citizenship as

required for jurisdiction (the "Order") (Attorney Declaration ¶19 and Exhibit H).

The Order, signed and filed on December 20, 2019, provided that Germantom could

"replead an adequate basis of diverse citizenship no later than 30 days from this order."

(Attorney Declaration ¶20 and Exhibit H). Instead of complying with the Order, Germantom let

---

[2] It should be noted that Germantom's counsel finally called defendants' attorney in the afternoon on July 23, 2020, after the "new" affidavits were filed, nine days after the invitation to talk, and after the motion documents were substantially completed. The conversation bore no fruit.

the thirty days lapse then filed the instant complaint on February 4, 2020 (Attorney Declaration ¶21 and Exhibit A).

The instant complaint makes no new "substantive" allegations other than that Defendants "conduct business under and in the name of [Epoch Media Group] to disguise their own legal entities and corporate structure, and to avoid contractual liabilities." (Attorney Declaration ¶22 and Exhibit A).

In the prior action, the sole defendant filed a Rule 7.1 Disclosure Statement (Attorney Declaration ¶ 23 and Exhibit I) which reads as follows:

> [t]he plaintiff commenced this action against the wrong party. The undersigned represents the purported defendant **Epoch Media Group which is an assumed name for Epoch Group, Inc.,** which has no corporate parents, and there is no publicly held corporation that owns 10% of more of its stock. (emphasis added).

Despite Germantom's musings, a publicly available document showing that Epoch Media Group (defendant in the prior action) is an assumed name of Epoch Group, Inc., was filed with the New York Secretary of State in June 2016 (Attorney Declaration ¶24 and Exhibit J). Germantom did not review the 7.1 Disclosure Statement nor perform simple due diligence and obtain a copy of the assumed name certificate before recklessly plunging headlong into this litigation and making specious allegations.

## III.    ARGUMENT

The U.S. Supreme Court has held that "[b]efore a federal court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Inc. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987), cited and reprinted in *Fowler v. City of NY*, 2015 US Dist LEXIS 171729, at *12 (EDNY 2015). To that end, Fed. R. Civ. Pro. 12(b)(5) permits a defendant to move to dismiss a complaint for insufficient service of process for failure to serve the summons and complaint in an authorized manner.

In such motions, "the plaintiff bears the burden of demonstrating that service was sufficient. Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order) (citing Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005)); see also Hood v. Ascent Med. Corp., No. 13-CV-628, 2014 U.S. Dist. LEXIS 144156, 2014 WL 5089559, at *2 (S.D.N.Y. Oct. 9, 2014)." *Brunson-Bedi v. NY,* 2018 US Dist LEXIS 74031, at *7 (SDNY 2018). Moreover, in 12(b)(5) motions, courts "should look at matters and documents outside of the complaint in rendering a decision on this issue." *Id*., at *7-8 (internal quotations and citations omitted).

Service of process rules in federal courts are found in Fed. R. Civ. P. 4; as relevant here, Rule 4(h) for the Corporate Defendants and Rule 4(e) for Mr. Tang. A review of the facts and circumstances of service of process upon Defendants can lead only to the conclusion that they were not served in accordance with these rules. Accordingly, the complaint should be dismissed.

A.  Service Upon the Corporate Defendants.

"In deciding a Rule 12(b)(5) motion, a court must look to Rule 4, which governs the content, issuance, and service of a summons." *Oyewole v Ora*, 291 F Supp 3d 422, 429 (S.D.N.Y. 2018), aff'd, 776 F. App'x 42 (2d Cir. 2019), reh'g and reh'g en banc denied (2d Cir. Oct. 16, 2019) (internal citations omitted). "Federal Rule of Civil Procedure 4[h(1)(B)] provides that service of process on a corporation may be completed by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Crawford v. US Sec. Assoc.*, 2020 US Dist LEXIS 3562, at *9-11 (SDNY 2020) (internal quotations and citations omitted).

It is well-established, both under federal and New York law, that "a managing or general agent is [a] person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent . . . , who acts in an inferior

capacity and under the direction and control of a superior authority, both in regard to the extent

of his duty and the manner of executing it. See also Grammenos v. Lemos, 457 F.2d 1067, 1073

(2d Cir. 1972) ("A general or managing agent must be invested with powers of discretion and

must exercise judgment in his duties, rather than being under direct superior control as to the

extent of his duty and the manner in which he executes it.")." *D'Amico Dry D.A.C. v. McInnis*

*Cement Inc.*, 2020 US Dist LEXIS 114749, at *7-8 (SDNY 2020).

  "In other words, a managing or general agent is one who operates at [the organization's]

highest levels, or . . . has overall authority to make high-level decisions on the part of the

enterprise. Cooney v. Barry Sch. of Law, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014); see also

Kwan v. Schlein, 441 F. Supp. 2d 491, 496 (S.D.N.Y. 2006) ("New York law . . . largely

mirror[s] federal law in requiring corporate service to be made upon an officer, director, agent, or

similarly high-ranking corporate official.")." *D'Amico Dry D.A.C.,* at *7-8.

  Here, the affidavits from the process server (Exhibits C and F) do not contain any

statements that the individual who he identifies as a receptionist is a "Managing Agent . . . who

is designated by law to accept service of process on behalf" of the Corporate Defendants or was

otherwise authorized to accept process on their behalf. *Valle v. GDT Enters.,* 2020 US Dist

LEXIS 14067, at *9-10 (EDNY 2020). Simply stated, the affidavits do not indicate how the

process server knew that the person who accepted service was authorized to do so.

  "Multiple courts in this district have held that service upon a corporation under these

circumstances is insufficient. See, e.g., Valle v. GDT Enters., 19 CV 797, 2020 U.S. Dist. LEXIS

14067, 2020 WL 435295, at *3-4 (E.D.N.Y. Jan. 28, 2020); Shengjian Zhuang v. Hui's Garden

Rest., Inc., No. 17 CV 7547, 2019 U.S. Dist. LEXIS 65177, 2019 WL 1578193, at *1-2

(E.D.N.Y. Feb. 19, 2019); Trs. of Empire State Carpenter's Annuity, Apprenticeship, Labor-

Mgmt. Cooperation, Pension & Welfare Funds v. R. Baker & Sons All Indus. Servs., Inc., No. 13 CV 4590, 2014 U.S. Dist. LEXIS 129146, 2014 WL 6606402, at *3-4 (E.D.N.Y. Aug. 4, 2014), report and recommendation adopted, 2014 U.S. Dist. LEXIS 127747, 2014 WL 4536911 (E.D.N.Y. Sept. 11, 2014)." *Arizaga v. Reina de la Nube Azoguez, Inc.*, 2020 US Dist LEXIS 66432, at *3, n 2 (EDNY 2020).

The Corporate Defendants by contrast have provided declarations from both the receptionist, Leefong Shu and the Vice President, Dana Cheng, indicating that Ms. Shu is a part-time, volunteer who sometimes acts as a receptionist and not authorized to accept service on behalf of the Corporate Defendants and never told the process server that she was authorized. Indeed, she told the process server to take the documents back and that she cannot accept them (Shu Declaration ¶6).

Germantom cannot provide any evidence to rebut those assertions or to otherwise demonstrate that Ms. Shu was authorized by the Corporate Defendants to accept service of process on their behalf or informed the process server that she was so authorized. "Accordingly, [Germantom] has not satisfied [its] burden of burden of proving adequate service upon the [Corporate Defendants]." *Valle v. GDT Enters.*, at *10-12 (internal quotations and citations omitted).

Fed. R. Civ. P. 4(h) also provides that "a corporation may be served in the same manner allowed by the state in which the district court is located * * * here, New York. Under New York law, a corporation may be served through an 'officer, director, managing or general agent, or cashier or assistant cashier or . . . any other agent authorized by appointment or by law to receive service (citing N.Y. C.P.L.R. 311(a)(1))." *Crawford v. US Sec. Assoc.,* US Dist LEXIS 3562, at *9-11 (SDNY 2020) (internal quotations and citations omitted).

Not surprisingly, the *Crawford* court found that service upon defendant's

> **receptionist**—who was not authorized to accept service for the corporation— was
> improper. Indeed, courts have repeatedly found service on **receptionists** to be
> defective. See, e.g. Pope v. Rice, No. 04 Civ. 4171 (DLC), 2005 U.S. Dist. LEXIS
> 4011, 2005 WL 613085, at *14 (S.D.N.Y. Mar. 14, 2005) (service on
> "**receptionist**" did not effectuate service on corporate defendant); Jiao v. First Int'l
> Travel, Inc., No. 03 Civ. 165 (DF), 2004 U.S. Dist. LEXIS 14920, 2004 WL
> 1737715, at *4 (S.D.N.Y. Aug. 4, 2004) (same); see also N.Y. C.P.L.R. § 311
> (Practice Commentary) (requiring service on a corporation by delivery to an agent
> "empowered with supervisory authority and possess[ing] judgment and discretion
> to take action on behalf of the corporation" — not "[l]ow-level employees who
> serve as **receptionists** or clerks") (emphasis added).

*Crawford* at *9-11.

Germantom filed affidavits of service which allege that all Defendants were served *en masse* on March 13, 2020 (Exhibit C). The affidavits of service state that the pleadings were "left with the receptionist" but are devoid of any real and meaningful language about the facts and circumstances of service. Further, the affidavits of service do not set forth that the process server asked the receptionist if she was authorized to receive process on behalf of all of the Corporate Defendants. Indeed, the affidavits of service merely state that "[t]he receptionist refused to provide her first and last name." (Exhibit C). District Courts within the Second Circuit have consistently held that "[a] process server's reliance has been found unreasonable when he made no attempt to ascertain the title or corporate position of the individual who accepted the papers or even to inquire whether the individual was actually an employee of the defendant corporation." *Valle v. GDT Enters.*, 2020 US Dist LEXIS 14067, at *9 (EDNY 2020).

"[T]he simple fact that [the defendants] obtained a copy of the . . . [summons and] complaint against [them] is insufficient for service to be deemed effective under New York law." *Valle v. GDT Enters.*, 2020 US Dist LEXIS 14067, at *10-12 (EDNY 2020), citing, *Gerena v. Korb*, 617 F.3d 197, 202 (2d Cir. 2010). The *Valle* court also cited *Ruffin v. Lion Corp.*, 15

N.Y.3d 578, 583 (N.Y. 2010) ("Defendant's actual receipt of the summons and complaint is not dispositive of the efficacy of service."); *Macchia v. Russo*, 67 N.Y.2d 592, 595 (N.Y. 1986) ("In a challenge to service of process, the fact that defendant has received prompt notice of the action is of no moment. . . . Notice received by means other than those authorized by statute does not bring a defendant within the jurisdiction of the court."). *Valle v. GDT Enters.*, at *10-12.

B.  Service Upon Mr. Tang (individual defendant).

Fed. R. Civ. Pro. 4(e) provides for service upon individuals (i) by following state service laws in the state where the district court is located, or (2) personally, by leaving a copy at the individual's home with someone of suitable age and discretion who resides there, or by delivering a copy to an authorized agent.

Here, the affidavit of service clearly indicates that the process server left the summons and complaint with the receptionist at the Corporate Defendants' offices not at Mr. Tang's home "with someone of suitable age and discretion who resides there . . . ." Fed. R. Civ. P. 4(e)(2)(B). To be sure, "federal law does not provide for service upon an individual at a place of employment or business." *Ji Han Yoon v. Toothsavers Dental Lab., Inc.*, 2020 US Dist LEXIS 109934, at *15 (EDNY 2020).

The process server never asked Ms. Shu if she knew the individual defendant Mr. Tang, he did not ask whether Mr. Tang worked in the office, nor did he ask whether Mr. Tang was available (Shu Declaration ¶¶ 8). Ms. Shu was not authorized to accept service on behalf of defendant Mr. Tang (Tang Declaration ¶3, Shu Declaration ¶7). Accordingly, service of process was not effectuated upon Mr. Tang under federal methodology. See generally, *Miss Jones, LLC v. Viera,* 2019 U.S. Dist. LEXIS 19510 (EDNY 2019).

12

Service upon individuals in New York is found in CPLR § 308 and is effectuated by leaving copies of the summons and complaint at the individual's dwelling house or usual place of abode with some person of suitable and discretion <u>and by mailing</u> a copy of the pleadings to that individual.[3] See generally, *S. Bay Sailing Ctr., Inc. v Std. Fire Ins. Co.*, 2017 US Dist LEXIS 7116, at *21 (EDNY 2017).

Here, the affidavit of service upon Mr. Tang is devoid of any language that the pleadings were mailed to him (Exhibits C and F) or to any of the Corporate Defendants for that matter (Cheng Declaration ¶4). Mr. Tang asserts in his declaration that he did not receive copies of the pleadings by mail (Tang Declaration ¶3). So, service was not effectuated under New York law because no copies of the pleadings were served upon him by mail. It should be noted that the "Second Circuit has rejected the argument that "actual notice" is sufficient to cure an improper service, National Development Co. v. Triad Holding Corp., 930 F.2d 253, 256 (2d Cir. 1991)." *GMA Accessories, Inc. v BOP, LLC*, 2008 US Dist LEXIS 26120, at *6 (SDNY Mar. 20, 2008).

C.  <u>Failure to Serve Within 90 Days</u>.

Fed. R. Civ. P. 4(m) mandates that service of process must be made within ninety (90) days of the filing of the complaint. Germantom filed its complaint on February 4, 2020 so service had to be completed by May 4, 2020. As described above, Germantom's attempts to serve all

---

[3] CPLR § 308 states, in relevant part, that service may be effectuated "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served <u>and by either mailing</u> the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served." (emphasis added).

defendants with the summons and complaint have been disastrous and service has not been effectuated within the applicable 90-day time period.

Although courts have excused delayed service for good cause, see, *Zapata v. City of NY*, 502 F3d 192, 193 (2d Cir. 2007), "[g]ood cause to excuse a failure to effect service exists only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Kogan v. Facebook, Inc.*, 2020 US Dist LEXIS 19464, at *16 (SDNY 2020); (internal quotations and citations omitted). Moreover, a "party seeking a good cause extension bears a heavy burden of proof, which is not satisfied by a showing that the plaintiff encountered some unanticipated difficulty." *Id*. It should also be noted that an "attorney's inadvertence, neglect, or mistake is not good cause." *Id*.

Germantom would be hard pressed to articulate any exceptional circumstances warranting a finding of "good cause" to excuse its wholesale failure to serve the pleadings properly and in a timely manner as described above. See, *Kogan v Facebook, Inc.*, 2020 US Dist LEXIS 19464, at *16 (SDNY 2020); *Tooker v. Town of Southampton*, 2019 US Dist LEXIS 11781, at *13-15 (EDNY 2019).

In the absence of good cause, courts have discretion to grant equitable relief through extensions for service but are not required to do so. *See Zapata*, at 196-97. "[E]ven if the balance of hardships favors the plaintiff a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect." *Kogan v Facebook, Inc.*, at 24.

In the instant case, it is respectfully requested that the Court decline to exercise discretion to allow Germantom to serve process belatedly for two material reasons: (1) Germantom

14

willfully circumvented a court order, and (2) Germantom attempted to "modify" the affidavits of service four months later when confronted with the allegation of insufficiency of service of process. In other words, Germantom has not approached this court with clean hands. As the Supreme Court stated long ago, the "clean hands" doctrine "is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . ." *Motorola Credit Corp. v. Uzan*, 561 F3d 123, 129 (2d Cir. 2009).

    1.  <u>Germantom's Violation of a Court Order.</u>

Germantom had commenced a prior action against Epoch Media Group, LLC on November 8, 2019, Case No. 19-cv-10306 (AKH) (Attorney Declaration ¶18 and Exhibit G). The prior complaint was dismissed by order of this Court because Germantom failed to identify the members of Epoch Media Group, LLC and allege their citizenship as required for jurisdiction (the "Order") (Attorney Declaration ¶19 and Exhibit H).

The Order, signed and filed on December 20, 2019, provided that Germantom could "replead an adequate basis of diverse citizenship no later than 30 days from this order." (Attorney Declaration ¶20 Exhibit H). Instead of complying with the Order, Germantom let the thirty days lapse then filed the instant complaint on February 4, 2020 (Attorney Declaration ¶21 and Exhibit A).

Indeed, the instant complaint is the same "old wine in a new bottle" and makes no new "substantive" allegations other than that Defendants "conduct business under and in the name of [Epoch Media Group] to disguise their own legal entities and corporate structure, and to avoid contractual liabilities." (Exhibit A ¶11).

Undeniably, the convoluted allegation of non-disclosure of the "correct" name of defendant was only added to end run the Order as the first and second complaints are virtually identical in the majority of paragraphs and arise from the same alleged contract and factual predicates; a cursory side-by-side comparison of the two complaints starting at paragraph 5 of the first complaint and the second sentence of paragraph 12 of the second complaint reveals the similarity of the two pleadings on a consistent (albeit not always identical) basis.

In any event, Germantom's allegation is absurd as the name of the correct party in interest was set forth in Epoch Media Group's Rule 7.1 Disclosure Statement in the prior action which was filed on December 15, 2019 (Exhibit I):

> [t]he plaintiff commenced this action against the wrong party. The undersigned represents the purported defendant **Epoch Media Group which is an assumed name for Epoch Group, Inc.,** which has no corporate parents, and there is no publicly held corporation that owns 10% of more of its stock. (emphasis added).

Had Germantom read Epoch Media Group's 7.1 Statement and performed simple due diligence investigation by accessing the New York Secretary of State's website to ascertain the true name of defendant and then contacting that office for a copy of the assumed name certificate, then the prior complaint could have been amended setting forth the proper party within the thirty (30) day period as required under the Order obviating the need to commence the second case. A copy of the publicly available filing showing that Epoch Media Group (part 3) is an assumed name of Epoch Group, Inc. (part 1) can be found in Exhibit J.

2.  Germantom's Attempt to Modify the Affidavits of Service.

In an effort to resolve the issues involved in the instant motion prior to filing it, defendants' attorney sent a letter to Germantom's counsel via email on July 15, 2020 inviting him to discuss the procedural infirmity (Attorney Declaration ¶11 and Exhibit D). Counsel to Germantom replied "[t]hanks for the letter. I will get back to you shortly." (Attorney Declaration

¶12 and Exhibit E). Instead of contacting defendants' counsel in a timely manner, Germantom's counsel apparently contacted the process server and asked him to sign new affidavits of service <u>four months later</u> to include language which he mistakenly believed would be curative (Attorney Declaration ¶13 and Exhibit F).[4]

The language that was added to the "new" affidavits was inserted on July 22, 2020, more than <u>one week</u> after defendants' counsel's invitation to resolve this matter and reads: "She appeared to be authorized to accept service on behalf of Epoch Times, Inc., the related entities and individual." Attorney Declaration ¶14 and Exhibit F).

Just how a person "appears" to be authorized to accept service of process without further description more than four months after the alleged service was effectuated lies in the realm of the metaphysical but is certainly insufficient on its face. See, *Valle v GDT Enters.*, 2020 US Dist LEXIS 14067, at *9-10 [EDNY 2020) which cites, "*Shengjian Zhuang*, 2019 U.S. Dist. LEXIS 65177, 2019 WL 1578193, at *2 (finding that the process server's failure to explain how he knew that a Jane Doe was authorized to accept service suggested that service was not made to a person authorized to accept service), and *Baity v. Kralik*, 51 F. Supp. 3d 414, 430 (S.D.N.Y. 2014) (finding that the plaintiff failed to demonstrate proper service where the affidavit of service only identified the individual who accepted service and stated that such individual is designated by law to accept service on behalf of [the defendant], but included no indication that the individual was actually authorized to accept service on behalf of the defendant, or that she represented the same to the process server)." *Id.* (internal quotations omitted).

---

[4] It should be noted that Germantom's counsel finally called defendants' attorney in the afternoon on July 23, 2020, after the "new" affidavits were filed, nine days after the invitation to talk, and after the motion documents were substantially completed. The conversation bore no fruit.

Compounding the deficiency of the "new" affidavits, is that the notary stamps reveal that the notary public is licensed in Georgia not New York (Attorney Declaration ¶16 and Exhibit F). It is hard to imagine that the process server, Kieffer Ramirez, actually signed the "new" affidavits of service in her presence in Georgia since he undeniably works for TIO Square, Inc., licensed and located in and serving New York.[5]

If however, the notary moved and now resides in New York, her notary license from Georgia is invalid. See generally, Executive Law § 130, *et seq*.[6] Indeed, "[n]onresidents other than attorneys who have offices or places of business in New York State may also become notaries. The oath of office and signature of the notary must be filed in the office of the county clerk of the county in which the office or place of business is located." *Id*. Germantom has not shown in its filings to date on the docket that Ms. Becker is a New York notary. Accordingly, the "new" affidavits are not duly sworn and ineffective.

## V.     CONCLUSION

Germantom did not comply with the requirements of service of pleadings as set forth in Fed. R. Civ. P. 4 either under federal law or the law of New York. Since service or process was insufficient and more than ninety (90) have passed since the filing of the complaint on February 4, 2020, Fed. R. Civ. P.4(m) mandates that the complaint be dismissed.

---

[5] According to TIO Square's website: "We are TIO Square, a boutique Private Investigation and Technology agency located in New York City." https://tiosq.com/#About. Moreover, according to an article published online written by the process server, Kieffer Ramirez, he is "a Licensed Private Investigator with over 18 years of investigative experience and is the Director of IT and Investigations at TIO Square Inc., New York's premiere Private Investigation Agency." See, https://www.serve-now.com/articles/2632/how-locate-missing-person-civil-lawsuit.

[6] See: https://www.dos.ny.gov/licensing/lawbooks/notary.pdf